UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KEVIN M. HAYNES, | No. CV 17-2299-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 23, 2017, seeking review of the Commissioner's denial of his application for Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before a Magistrate Judge on April 11, 2017, and April 20, 2017. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on November 13, 2017, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Submission under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on August 10, 1963. [Administrative Record ("AR") at 27, 266.] He has past relevant work experience as a warehouse laborer. [AR at 27, 50.]

On October 22, 2012, plaintiff filed an application for SSI payments, alleging that he has been unable to work since May 1, 2002.[1] [JS at 2; see AR at 113, 266-69.] After his application was denied initially, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [JS at 2; AR at 138-40.] A hearing was held on December 12, 2013, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 60-79.] A vocational expert ("VE") also testified. [AR at 74-78.] On January 28, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from October 22, 2012, the date the application was filed. [AR at 110-22.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 188-89.] The Appeals Council remanded the claim to the ALJ for further proceedings. [AR at 126-28.] The same ALJ held another hearing on December 15, 2015, at which time plaintiff again appeared represented by an attorney, and testified on his own behalf. [AR at 35-55.] On February 2, 2016, the ALJ issued a decision again concluding that plaintiff was not under a disability from October 22, 2012, the date the application was filed. [See AR at 17-29.] When the Appeals Council denied plaintiff's request for review on January 24, 2017 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

---

[1] On July 31, 2009, plaintiff filed an application for SSI payments, which was denied on August 12, 2011. [AR at 83-90.]

2

evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.
## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

The Appeals Council directed the ALJ on remand to further evaluate plaintiff's mental impairments, and give further consideration to his ability "to interact independently, appropriately, effectively, on a sustained basis with other individuals in work situations or situations that may involve interactions with the public, responding appropriately to persons in authority or cooperative behaviors involving coworkers." [AR at 17, 127-28.] The Appeals Council also directed the ALJ

to further consider plaintiff's maximum residual functional capacity ("RFC")[2] "and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations," and to obtain supplemental evidence from a VE to clarify the effect of the assessed limitations on plaintiff's occupational base. [Id.]

Following remand, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 22, 2012, the date the application was filed. [AR at 20.] At step two, the ALJ concluded that plaintiff has the severe impairments of hallux valgus deformity; bipolar disorder; and hypertension. [Id.] The ALJ also found that plaintiff's alleged knee pain is a non-medically determinable impairment. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b),[3] as follows:

> [He] is able to lift 20 pounds occasionally and 10 pounds frequently. [He] is able to sit for six hours and stand and walk for four hours. [He] is able to perform simple repetitive tasks. [He] can have no public contact. [He] is able to have occasional contact with co-workers and supervisors.

[AR at 22.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform his past relevant work as a warehouse laborer. [AR at 27, 50-51.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

perform, including work as an "office helper" (Dictionary of Occupational Titles ("DOT") No. 239.567-010), and "general inspector" (DOT No. 739.687-038). [AR at 28, 51-53.] Accordingly, the ALJ determined that plaintiff was not disabled at any time since October 22, 2012, the date the application was filed. [AR at 28.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when she failed to provide specific and legitimate reasons for rejecting the opinion of Rama Nadella, M.D., the psychiatric consultative examiner. [JS at 4-5.] As set forth below, the Court agrees with plaintiff, and remands for further proceedings.

### A. LEGAL STANDARD

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[4] The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). Thus, "[a]s a general rule, more weight should be given to the opinion of a

---

[4] The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein. See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

6

treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198); Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198); Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray v. Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating

doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

**B.    ANALYSIS**

On March 4, 2013, Dr. Nadella, the psychiatric consultative examiner, conducted an evaluation of plaintiff. [AR at 461-68.]  He observed that plaintiff reported he had been "hearing voices 'for a while,' meaning for several years," and that they are a "part of him and he just accepts them." [AR at 462.] Plaintiff also reported he has trouble concentrating and sleeping because of the voices. [Id.] Dr. Nadella conducted a mental status examination and observed that plaintiff's mood and affect were "inappropriately happy" and euthymic; his thoughts were relevant, non-delusional, coherent, and organized; there was no evidence of exaggeration or manipulation; his speech was normal and clearly articulated; he appeared to be of average intelligence; and his insight and judgment appeared intact. [AR at 463.]  He noted that plaintiff was taking the anti-psychotic medication Abilify, among other things. [AR at 462.] Dr. Nadella noted that plaintiff "has thoughts about the voices [he hears] in a matter of fact manner as if they are real." [Id.] He found that plaintiff had a marked limitation in the ability to complete a normal workday without interruption. [AR at 465.] He also found moderate limitations in plaintiff's abilities to perform work activities without additional supervision, accept instructions from supervisors, interact with the public, coworkers, and supervisors, and deal with the usual stressors encountered in competitive work. [Id.] He opined that plaintiff is able to perform simple and repetitive work, but not detailed and complex tasks. [Id.] Dr. Nadella did not have any psychiatric records to review, but found plaintiff appeared to be a "reliable and adequate historian." [AR at 461.]

The ALJ gave "little weight" to Dr. Nadella's opinion. [AR at 25-26.]  In light of plaintiff's "reported difficulty with getting along with others and concentration," the ALJ found "reasonable" Dr. Nadella's findings that plaintiff is "able to perform simple and repetitive tasks . . . [;] [and is] moderately limited in performing work activities on a consistent basis; performing work activities without additional supervision; accepting instructions from supervisors; interacting with the public,

co-workers and supervisors; and dealing with the usual stressors encountered in competitive work." [Id.] The ALJ noted, however, that "Dr. Nadella's finding[] that [plaintiff] is markedly limited in completing a normal workday without interruption is unsupported by her [sic] examination findings," as plaintiff's "mental status examination results were generally unremarkable; his memory was intact; he was observed with normal speech; and he was oriented as to time, place, person, and purpose." [AR at 26 (citation omitted).]

On March 25, 2013, the State agency reviewing examiner, Joshua D. Schwartz, Ph.D., reviewed Dr. Nadella's findings, and other records as summarized by the State agency. [AR at 96-100, 100-05.] Dr. Schwartz noted that on November 14, 2009, a previous psychiatric consultative examiner found plaintiff was moderately impaired in his ability to maintain concentration and focus, and had mild restrictions in his activities of daily living[5] [AR at 100]; and that a March 11, 2011, Mental Residual Functional Capacity questionnaire completed by Barry Edelman, M.D. [see AR at 88, 100[6]] reflected marked restrictions with memory, maintaining attention, performing complex tasks, maintaining regular attendance, and responding appropriately to changes in the work place, with all other mental abilities moderately impaired.[7] [AR at 100.] Dr. Schwartz also noted that on September 23, 2011, plaintiff was discharged from treatment by Augustus Hawkins Mental Health Center, where he had been diagnosed with major depressive disorder, recurrent, severe with psychotic features. [Id.] The discharge summary also reported that after May 2011 plaintiff never met with the therapist to continue services and that plaintiff's progress is "not known." [Id.] Dr. Schwartz observed that the November 2009 consultative report had "no indication" of auditory hallucinations or psychosis, which he found to be inconsistent with

---

[5] This record is not part of the Administrative Record before this Court.

[6] This questionnaire is not part of the Administrative Record before this Court, but its findings were reviewed in the August 12, 2011, decision denying plaintiff's application for SSI payments. [AR at 83-90.]

[7] Dr. Schwartz failed to mention that Dr. Edelman, like Dr. Nadella, also determined that plaintiff had a "*marked* restriction" in his ability to "complete a normal work-day and work-week without interruptions from psychologically-based symptoms . . . ." [See AR at 88.] Thus, Dr. Edelman's opinion on this issue was consistent with Dr. Nadella's finding.

plaintiff's report to Dr. Nadella that he had been experiencing auditory hallucinations since 2000. [AR at 101.] Dr. Schwartz also noted that other than plaintiff's "inappropriately happy affect," Dr. Nadella's 2013 mental status examination was otherwise within normal limits. [Id.] He determined that the marked limitation of completing a normal workday found by Dr. Nadella was "based on non-supported reporting of [auditory hallucinations]," and relied heavily on plaintiff's subjective reporting of symptoms and limitations, which was not supported by the totality of the evidence, and therefore overestimated "the severity of [plaintiff's] restrictions/limitations and [were] based only on a snapshot of [plaintiff's] functioning." [AR at 101, 105.] Without elaboration or explanation, Dr. Schwartz further stated that there were inconsistencies in Dr. Nadella's opinion, "rendering it less persuasive." [AR at 105.] Dr. Schwartz described mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace, and concluded that plaintiff could perform simple tasks. [AR at 102-05.] In his Mental Residual Functional Capacity Assessment, Dr. Schwartz found plaintiff "not significantly limited" in his ability to maintain attention and concentration for extended periods; could perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; could sustain an ordinary routine without special supervision; and can work in coordination with or in proximity to others without being distracted by them. [AR at 104.] He found plaintiff to be "moderately limited" in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. [AR at 105.] He stated that plaintiff had no social interaction limitations. [Id.] Dr. Schwartz concluded that there was no change in circumstance to give reason to change the 2011 ALJ decision, which included an impairment of affective disorder, and a limitation to simple repetitive tasks. [AR at 101, 104-05.]

The ALJ gave "some weight" to the opinions of Dr. Schwartz. [Id.] He noted that Dr. Schwartz' finding that plaintiff "is limited to simple tasks is consistent with [plaintiff's] statements regarding his inability to pay attention and report that he has trouble concentrating." [Id.] The ALJ went on to state:

However, the undersigned finds that [plaintiff] is more limited in maintaining social

> functioning. The undersigned has considered [plaintiff's] report that he has difficulty getting along with others. The psychological consultative examiner also opined that [plaintiff] is moderately limited in accepting instructions from supervisors and interacting with the public, co-workers, and supervisors.

[Id.] The ALJ did not discuss Dr. Schwartz' finding that the November 2009 consultative report had "no indication" of auditory hallucinations or psychosis,[8] or that Dr. Schwartz found plaintiff had moderate limitations in the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms.

Despite Dr. Schwartz' finding that there was no indication in the November 2009 consultative report of auditory hallucinations or psychosis (a record that is not before this Court), the record does reflect that plaintiff presented at the Los Angeles County -- Department of Mental Health on September 25, 2007, at which time he "reported the onset of subjective feelings of depression, PTSD symptoms, grief of . . . losing many family members," and also "shared that he has poor sleep, anger, *delusions*, *auditory hallucinations*, and isolating." [AR at 453 (emphasis added); see also supra note 8.] The summary of services further reflects that plaintiff began treatment on September 25, 2007, and that he was diagnosed with major depressive disorder, recurrent, severe *with psychotic features*. [AR at 453, 454.] He was last seen at the facility on May 25, 2011. [Id.] On September 23, 2011, the facility prepared a discharge summary, noting that plaintiff had begun treatment, "but never met with a therapist to continue services," and

---

[8] This consultative report was referred to in the August 12, 2011, decision denying plaintiff's previous application for SSI payments. [AR at 88, 89.] The Court recognizes defendant's argument that the August 2011 decision was final and binding and that the November 2009 consultative report predates the relevant period under consideration herein. (JS at 13 n.4). However, to the extent Dr. Schwartz concluded in his April 4, 2013, report that there was no prior history of auditory hallucinations or psychosis in the record, he was simply wrong. Moreover, virtually all disability claims substantially rely on evidence predating the date the application is filed, because a claimant "needs evidence of disability to apply for benefits, and that evidence necessarily involves records, statements, and opinions that predate the application." Thompson v. Berryhill, 2017 WL 4296971, at *3 (W.D. Wash. Sept. 28, 2017). The mere fact that a claimant alleges disability before he or she is eligible to begin receiving SSI benefits does not render evidence from the alleged onset of disability irrelevant. Id. (noting that the Commissioner "would have the Court find no error where the ALJ ignores or omits the . . . medical evidence [predating the application], and instead concludes that based upon a lack of evidence from the 'relevant' period in an SSI case, the claimant retains the RFC to perform a job in the national economy").

11

"missed several scheduled psychotherapy appointments and appeared only interested in medication."[9] [AR at 453.] Plaintiff was "discharged" due to a lack of participation in the program. [AR at 454.] It was noted that the psychiatric social worker's recommendations "would have been to continue psychotherapy and obtain a medication evaluation." [Id.] The associated treatment notes dating between 2010 and 2012 appear to reflect that plaintiff frequently exhibited a euthymic mood [see, e.g., AR at 457, 458, 459, 460] and, although difficult to decipher, seem to include regular assessment of plaintiff's mood swings, hallucinations, and delusions. [See generally AR at 451-60.]

Plaintiff argues that Dr. Schwartz' statement that the longitudinal record contains no indication of auditory hallucinations other than as noted by Dr. Nadella -- which the ALJ did not either specifically accept or reject -- lacks the support of substantial evidence, as reflected in plaintiff's September 25, 2007, report of auditory hallucinations. [JS at 7 (citing AR at 26, 453), 8-9.] Plaintiff also notes that although the "State agency summary caught the diagnoses of a recurrent severe major depressive disorder with *psychotic features*[,] [it] missed the presentation history of auditory hallucinations." [Id. (citing AR at 100, 453) (emphasis added).] He further submits that the ALJ's characterization of Dr. Nadella's mental status examination as "generally unremarkable," failed to consider Dr. Nadella's finding that plaintiff had an "inappropriately happy affect and that [plaintiff] talk[s] to voices and talked about the voices talking to him." [Id. (citing AR at 463).] Plaintiff contends that the fact that he demonstrated an intact memory, normal speech, and was oriented during Dr. Nadella's examination, does not "dispel the fact that on clinical

---

[9] Defendant suggests that the facts that plaintiff was "only interested in medication," and had not met with a therapist, constitute an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," and are a "proper basis for finding that [plaintiff] is not as limited as he alleges." [JS at 16 (citations omitted).] Notwithstanding the fact that the ALJ's determination to discount plaintiff's subjective symptom testimony is not at issue here, the Court notes that a claimant's failure to seek mental health treatment is not necessarily a clear and convincing reason to find him less credible because "those afflicted [with depression] often do not recognize that their condition reflects a potentially serious mental illness." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996). Thus, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Id. (internal citations omitted).

1  examination Dr. Nadella was convinced" that plaintiff "heard voices, responded to them, talked
2  about them, and treated them as real." [JS at 7-8 (citing AR at 26, 463).] He concludes that the
3  fact that the ALJ never addressed the allegations and statements contained in the record that
4  hearing voices interfered with plaintiff's ability to complete a normal workday without interruptions
5  was error. [JS at 8 (citing Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015)).]

6  Defendant responds that the ALJ "reasonably explained" that she was discounting Dr.
7  Nadella's opinion that plaintiff would be markedly limited in his ability to complete a normal
8  workday without interruption because Dr. Nadella's objective examination findings were "generally
9  unremarkable." [JS at 10.] Defendant suggests that the ALJ considered Dr. Nadella's opinion in
10 the context of the record as a whole, "which indicated minimal-to-no mental health treatment
11 during the relevant time-period" for plaintiff's SSI claim. [Id.] Defendant further notes with
12 approval the ALJ's explanation that Dr. Nadella's finding of a marked limitation was not warranted
13 because "his memory was intact; he was observed with normal speech; and he was oriented as
14 to time, place, person, and purpose." [Id. (citing AR at 26, 463-65).] Defendant contends that
15 plaintiff did not assert auditory hallucinations as a disabling impairment in his SSI application, and
16 no treating physician opined that plaintiff had any significant work-related mental limitations. [Id.
17 (citing AR at 21-23, 41-42, 46, 66-74, 357-62, 443-46, 463).] Defendant also notes that plaintiff's
18 mental health provider in 2012 "assessed his condition as 'stable' with 'normal' mental status and
19 did not indicate" that plaintiff had any significant mental limitations. [JS at 12-13 (citing AR at
20 458).]

21 Preliminarily, defendant's suggestions that the ALJ reasonably discounted Dr. Nadella's
22 opinion because plaintiff failed to assert auditory hallucinations in his SSI application, because
23 plaintiff did not seek treatment during the relevant time frame, because no treating physician had
24 opined that plaintiff had any significant work-related mental limitations, and because plaintiff was
25 assessed at a single treatment visit as "stable,"[10] were not reasons given by the ALJ for

---

[10] Reports of "improvement" -- or in this case, "stability" -- in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature
(continued...)

13

discounting Dr. Nadella's opinions. "Long-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered *by the ALJ* -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray, 554 F.3d at 1225-26 (emphasis added, citation omitted); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision."). The Court will not consider reasons for discounting Dr. Nadella's opinions that were not given by the ALJ in the decision. See Trevizo, 871 F.3d at 677 & nn. 2, 4 (citation omitted).

In fact, the only reason specifically given by the ALJ for discounting Dr. Nadella's finding of marked limitations in completing a normal workday without interruption was because that finding was "unsupported by [his] examination findings." [AR at 26.] An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster her findings. See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others); see also Thompson, 2017 WL 4296971, at *3 (distinguishing between "relevant evidence of disability and the earliest date an SSI claimant is entitled to begin receiving payment"). In this case, the ALJ completely ignored plaintiff's history of auditory hallucinations and mental health treatment, rather than fulfilling her duty to weigh and assess all relevant evidence of record.

It is also improper for an ALJ to substitute her own opinion for that of a medical professional who examined plaintiff. See Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion, and [s]he must not succumb to the temptation to play doctor and make [her] own independent medical findings.") (internal quotation marks, alterations, and citations omitted). Here, the ALJ stated that plaintiff was found by Dr. Nadella to have intact memory, normal speech, and was oriented as to time,

---

[10](...continued)
of his symptoms. See Ryan, 528 F.3d at 1200-01 ("Nor are the references in [a doctor's] notes that Ryan's anxiety and depression were 'improving' sufficient to undermine the repeated diagnosis of those conditions . . . .").

place, person, and purpose, which the ALJ determined was inconsistent with Dr. Nadella's finding that plaintiff is markedly limited in completing a normal workday without interruption. [AR at 26.] However, the ALJ does not explain how an intact memory, normal speech, and orientation as to time, place, person, and purpose, is otherwise inconsistent (if it is) with experiencing auditory hallucinations (or other symptoms related to plaintiff's mental health impairments) that interfere with the ability to complete a normal workday without interruption. Neither does the ALJ explain how her interpretation of Dr. Nadella's mental status examination and plaintiff's resulting functional limitations is more reasonable than Dr. Nadella's conclusions, when Dr. Nadella's[11] conclusions were based on his examination and evaluation of plaintiff's mental impairments and resulting limitations. Additionally, the ALJ's finding virtually ignored plaintiff's diagnoses since at least 2007 of bipolar disorder or major depressive disorder *with psychotic features*, and evidence that he experienced delusions and/or mood swings. [See AR at 453, 454, 448-61.]

Because the ALJ did not provide a specific and legitimate reason for discounting the opinion of Dr. Nadella, remand is warranted on this issue.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination

---

[11] Dr. Nadella is a Board-Certified Psychiatrist. [AR at 465.]

can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for discounting the opinion of Dr. Nadella regarding plaintiff's ability to complete a normal workday without interruption, the ALJ on remand shall reassess the medical opinions of record. In assessing the medical opinion evidence, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Additionally, if warranted, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Finally, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[12] See Shaibi v. Berryhill, 870 F.3d 874, 882-83 (9th Cir. Aug. 22, 2017).

/
/
/
/
/
/
/
/

---

[12] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to his past relevant work.

# VII.
## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: November 30, 2017

*/s/ Paul L. Abrams*
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE